SLIP OPINION


# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-13-103

| | |
|---|---|
| HEIRS OF MANCIL DUNCAN AND SYLVIA DUNCAN ET AL.<br>APPELLANTS<br><br>V.<br><br><br>ALFRED T. WILLIAMS LIVING TRUST and MARCEIL E. SIBERT LIVING TRUST<br>APPELLEES | Opinion Delivered December 11, 2013<br><br>APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT<br>[NO. CV-09-78-4]<br><br>HONORABLE TIM WEAVER, JUDGE<br><br>REVERSED AND REMANDED |

## KENNETH S. HIXSON, Judge

On April 2, 2009, appellees Alfred T. Williams Living Trust and Marceil E. Sibert Living Trust (the Trusts) filed a complaint to quiet title to mineral interests in an eighty-acre tract of property in Cleburne County. On July 27, 2009, the trial court entered a decree quieting title to the mineral interests in the appellees.

On April 19, 2010, the appellants, heirs of Mancil and Sylvia Duncan (the Heirs), filed a petition to set aside the decree quieting title to the appellees. In their petition, the Heirs alleged that the Trusts failed to properly serve the Heirs with the quiet-title action, and that due to the lack of notice the Heirs were divested of their mineral interests without due process. The Heirs filed a motion for summary judgment on July 25, 2011, again alleging a lack of constructive or actual notice and asking that the default judgment be set aside pursuant to Ark. R. Civ. P. 55(c)(2).

On October 15, 2012, the trial court entered an order denying appellants' motion for summary judgment and dismissing their petition to set aside the decree. The Heirs now appeal, arguing that the trial court did not have jurisdiction to enter the decree quieting title in the appellees on July 27, 2009, due to lack of proper service. The Heirs therefore assert that the July 27, 2009 decree should have been set aside. We agree, and we reverse and remand.

The tract of property at issue in this appeal was acquired by Mancil and Sylvia Duncan in April 1962. On January 22, 1963, Mancil and Sylvia conveyed the property to William Pigford, reserving one-half of the oil, gas, and other minerals to themselves and their heirs. Prior to their deaths in 1994 and 1997, respectively, Mancil and Sylvia lived in a house in Tyler, Texas. After Sylvia died in 1997, the mineral rights at issue passed to the appellant heirs herein, Sandra Kay Duncan, Robyn Benita Heard, and Angela Renee Hudson. The Heirs lived in Mancil and Sylvia's home in Tyler, Texas, while this lawsuit was in progress.

In the Trusts' April 2, 2009 quiet-title complaint, they alleged that they acquired the surface rights to the eighty-acre tract in Cleburne County in 1985. They further alleged that Mancil and Sylvia Duncan had failed to assess or pay taxes on their one-half mineral interest in the property. The Trusts asserted that they had been paying taxes on the entire mineral and surface estate since 1985, and that they acquired ownership of Mancil and Sylvia's one-half mineral interest through adverse possession. Among the defendants named in the complaint were Mancil Duncan, Sylvia Duncan, or their heirs.

Simultaneously with the filing of the lawsuit, the Trusts' counsel filed an "affidavit of diligent search and inquiry of defendants" and filed an "affidavit for warning order." In the former affidavit appellees' counsel stated:

> 1. That in the preparation of the Complaint and the Affidavit for Warning Order to the defendants, he made diligent efforts to determine the identity of all persons who might have a possible claim in or against the oil, gas and other minerals in and to the property described in the Complaint filed in this cause.
> 2. That simultaneously with the publication of the Warning Order in this case, he undertook to search the regional telephone directory for Cleburne, Independence, Stone and Van Buren Counties, Arkansas, to determine if the defendants resided in those areas. He also undertook a search of the Internet person locators. Based upon these searches, he was unable to find any person who appeared to be the same as any of the defendants.
> 3. That due to the passage of time he believes that the defendants are no longer residents of this area, are deceased, or in the case of businesses, are no longer in business.

In the affidavit for warning order, the Trusts' counsel stated that the whereabouts of the defendants were unknown and that a warning order should be issued in accordance with Ark. R. Civ. P. 4(f). A warning order was issued on April 2, 2009, and published in the Heber Springs Sun-Times newspaper one time per week for two consecutive weeks.

On July 27, 2009, counsel for the Trusts filed an "affidavit of attempted service." In that affidavit, appellees' counsel stated that he had made due and diligent search and inquiry into the whereabouts of Mancil and Sylvia Duncan. Appellees' counsel further stated that this time, based on another search of Internet person locators, he found the names of Mancil Duncan and Sylvia Duncan with an address of 6100 Covey Lane, Tyler, Texas. The search also identified a Mancil Duncan with two addresses in New York. Appellees' counsel forwarded copies of the complaint, summonses, and warning order to each of these addresses,

3

along with a letter stating that if the recipient was the same Mancil or Sylvia Duncan who were parties to the deed in question, they had thirty days to respond. These documents were postmarked June 17, 2009, and sent by certified U.S. mail, return receipt requested. Delivery was attempted at the Tyler, Texas, address on June 22, 2009, but the letter was returned marked, "Not deliverable as addressed. Unable to forward." There was no response to the complaint, and on July 27, 2009, the trial court entered a decree quieting the mineral interests in the Trusts.

Almost a year later on April 19, 2010, the Heirs filed a petition to set aside the decree, asserting that there is no requirement to assess nonproducing minerals, and that the Trusts' basis for quieting title was fraudulent. The Heirs further alleged that the Trusts failed to properly serve them with the complaint, and that because the default judgment was entered without notice it was void. In the Heirs' motion for summary judgment filed on July 25, 2011, they again asserted that there was a lack of notice and that the judgment was void.

Hearings on appellants' petition and motion were held on December 19, 2011, and again on April 26, 2012, and at the hearings the parties made arguments pertaining to the sufficiency of service. On October 15, 2012, the trial court entered an order denying appellants' motion for summary judgment and dismissing its petition to set aside the decree. The trial court found that the Heirs had failed to establish that the Trusts failed to comply with the service requirements of Ark. R. Civ. P. 4, particularly Rule 4(f), and that there was no basis to set aside the July 27, 2009 judgment.

In this appeal, the Heirs contend that the trial court erred in failing to set aside the decree quieting title in the minerals to the Trusts. Although Rule 55 of the Arkansas Rules of Civil Procedure provides for entry of a default judgment when a party fails to appear or otherwise defend, our supreme court has recognized that defaults are not favored. *McGraw v. Jones*, 367 Ark. 138, 238 S.W.3d 15 (2006). Because of its harsh and drastic nature that can result in the deprivation of substantial rights, a default judgment should only be granted when strictly authorized. *Id.* Service requirements, being in derogation of common-law rights, must be strictly construed and compliance with them must be exact. *Nucor Corp. v. Kilman*, 358 Ark. 107, 186 S.W.3d 720 (2004). Judgments by default rendered without valid service are judgments rendered without jurisdiction and are therefore void. *Scott v. Wolfe*, 2011 Ark. App. 438, 384 S.W.3d 609. The Heirs argue that due to ineffective service, the July 27, 2009 judgment was void. When an appellant claims that a default judgment is void, the matter is a question of law which we review de novo. *Id.* Based on our de novo review, we agree that the judgment was void for lack of strict compliance.

It is undisputed that actual notice was not accomplished in this case. However, the Trusts contend that they accomplished service by warning order pursuant to Rule 4(f). We do not agree.

Rule 4(f) provides, in relevant part:

(1) If it appears by the affidavit of a party seeking judgment or his or her attorney that, *after diligent inquiry, the identity or whereabouts of a defendant remains unknown*, or if a party seeks a judgment that affects or may affect the rights of persons who are not and need not be subject personally to the jurisdiction of the court, service shall be by warning order issued by the clerk.

(2) The warning order shall state the caption of the pleadings; include, if applicable, a description of the property or other res to be affected by the judgment; and warn the defendant or interested person to appear within 30 days from the date of first publication of the warning order or face entry of judgment by default or be otherwise barred from asserting his or her interest. The party seeking judgment shall cause the warning order to be published weekly for two consecutive weeks in a newspaper having general circulation in the county where the action is filed and to be mailed, with a copy of the complaint, to the defendant or interested person at his or her last known address by any form of mail with delivery restricted to the addressee or the agent of the addressee. (Emphasis added.)

This rule permits constructive service by warning order only if the whereabouts of the defendant is unknown after "diligent inquiry." *Scott v. Wolfe*, *supra*. A mere recitation in an affidavit that a diligent inquiry was made is not sufficient. *Id*. The burden is on the moving party to demonstrate to the court that he actually attempted to locate the defendant. *Id*.

We hold that there was no strict compliance with Rule 4(f)(1) because the warning order was not issued after diligent inquiry into the whereabouts of the defendants as required by the rule. The April 1962 deed conveying the property to Mancil and Sylvia showed them to be residents of Smith County, Texas, where Tyler is the county seat. And, the January 1963 deed reserving one-half of the mineral rights to Mancil and Sylvia and their heirs was acknowledged by a notary public for Smith County, Texas. Therefore, two separate deeds regarding the property in question contained evidence that the Duncans resided in Smith County, Texas. A diligent inquiry should at a minimum begin in the location where a reasonable review of the case showed the parties to have last resided. It would have been reasonable for the Trusts to search the public records of Smith County, Texas. Had they done so, they would have discovered that Mancil and Sylvia were deceased and that they were looking for heirs.

6

Although Internet searches were attempted, these did not amount to strict compliance with Rule 4(f)(1). In his "affidavit of diligent search and inquiry of defendants," filed the same day the warning order was issued on April 2, 2009, counsel for the Trusts indicated that prior to applying for the warning order he undertook a search using Internet person locators and was unable to find any person who appeared to be any of the defendants. However, only three months later in the "affidavit of attempted service" subsequently filed by appellees' counsel on July 27, 2009, counsel stated that this subsequent search of Internet person locators identified a Mancil Duncan and a Sylvia Duncan with the same address in Tyler, Texas. Based on that information, notice of the lawsuit was mailed to that address. In each affidavit, appellees' counsel indicated that he used "Internet person locators" to search for the Duncans. In the first Internet search, counsel did not locate the Duncans; however, in the second Internet search three months later, counsel did locate the Duncans' address in Tyler, Texas. Rule 4(f)(1) plainly requires that the diligent inquiry must precede the issuance of the warning order.

We conclude that there was a failure of strict compliance with our service requirements, and that the July 27, 2009 decree quieting title of the mineral rights in the Trusts was void for lack of jurisdiction and should have been set aside. We hold that the trial court erred in denying the Heirs' petition to set the decree aside, and we reverse.

Reversed and remanded.
GLOVER and WOOD, JJ., agree.
*Drew E. Smith*, for appellants.
*Richard Mays Law Firm, PLLC*, by: *Richard H. Mays*, for appellees.